# United States Court of Appeals for the Federal Circuit

---

**VERSATOP SUPPORT SYSTEMS, LLC,**
*Plaintiff-Appellant*

**v.**

**GEORGIA EXPO, INC.,**
*Defendant-Appellee*

---

2018-1208

---

Appeal from the United States District Court for the District of Oregon in No. 3:15-cv-02030-JE, Magistrate Judge John Jelderks.

---

Decided: April 19, 2019

---

DAVID PAUL COOPER, Kolisch Hartwell, P.C., Portland, OR, argued for plaintiff-appellant. Also represented by OWEN W. DUKELOW, DESMOND JOHN KIDNEY, II.

JOHN L. NORTH, Hill Kertscher & Wharton LLP, Atlanta, GA, argued for defendant-appellee.

---

Before NEWMAN, LINN, and DYK, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

The United States District Court for the District of Oregon held, on cross-motions for summary judgment, that Georgia Expo, Inc. did not infringe VersaTop Support Systems' patent, copyright, or trademark rights.[1]  Only the trademark issue is before us.

The district court held that Georgia Expo's use of VersaTop's trademarks in advertising and brochures did not violate the Trademark Act because Georgia Expo had not "affixed" the VersaTop trademarks to goods that were "sold or transported in commerce."  The court held that such "use in commerce" was required for trademark infringement liability, and therefore the relevant statutory provision concerning likelihood of confusion was not applicable.  Summary judgment of noninfringement in favor of Georgia Expo was granted on this ground.

We conclude that the district court erred in law.  On the correct law, violation of the Trademark Act was established on the admitted facts.  We reverse the district court's judgment, and remand for appropriate further proceedings.

## BACKGROUND

VersaTop and Georgia Expo are competitors in the "drape and rod" industry.  Both parties produce and sell systems of modular rod and pole structures, for assembly to form sectional spaces such as trade show booths and other drape-separated structures, as well as temporary barricades. VersaTop's system for coupling structural components is the subject of U.S. Patent No. 9,211,027 ("the '027 patent"), and in the district court record is called the

---

[1]    *VersaTop Support Sys., LLC v. Ga. Expo, Inc.*, No. 3:15-cv-02030-JE, 2017 WL 1364617 (D. Or. Feb. 16, 2017) (Findings and Recommendations) ("F&R"); 2017 WL 1393050 (D. Or. Apr. 13, 2017) ("Dist. Ct. Order"); (D. Or. Apr. 17, 2017) (Final Judgment) (J.A. 94).

"'ball and crown' coupler." F&R at *1. VersaTop states that since 2011 it has sold these systems with the trademarks PIPE & DRAPE 2.0™ and 2.0™.[2] Am. Compl. ¶ 14 (J.A. 98).

The complaint states that Georgia Expo distributed advertising and brochures that contained these VersaTop trademarks as well as pictures of the VersaTop coupler. The complaint includes pictures of two of the flyers distributed by Georgia Expo:




Am. Compl. ¶ 19; Counts IV, V (J.A. 102–05); Exs. to Am. Compl. H, I (J.A. 153, 156).

On October 28, 2015, VersaTop filed a complaint with counts for trademark and copyright violations. On

---

[2]    These marks have since been federally registered by VersaTop.

December 21, 2015, VersaTop filed an amended complaint with an additional count for infringement of the '027 patent, which had issued six days earlier. In response, Georgia Expo denied any and all infringement. Following discovery, the parties filed cross-motions for summary judgment. The magistrate judge issued Findings and Recommendations, which were adopted in full by the district court. *See* n.1.

The district court found that VersaTop owns the trademarks PIPE & DRAPE 2.0 and 2.0. F&R at *4. The court also found that "Georgia Expo does not dispute that its October 2015 brochures included a picture of VersaTop's coupler product and references to VersaTop's trademarked product names." *Id.* at *4. However, the district court ruled that because Georgia Expo had not affixed the VersaTop trademarks to goods sold or transported in commerce, Georgia Expo had not violated VersaTop's trademark rights. *Id.* at *4–5. The court stated:

> Georgia Expo correctly notes, as applied to goods, "'use in commerce' requires that the mark be 'placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce.'" 15 U.S.C. §1127 ("use in commerce" definition (1)(A)-(B)).

*Id.* at *4–5. The court referred to VersaTop's argument that the Trademark Act at 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act) prohibits false designation of origin and creating a likelihood of confusion, but held that the statute did not apply because "neither Georgia Expo's brochure nor its October 2015 tradeshow activities meet the requirements for the applicable definition of 'use in commerce' under the Lanham Act." *Id.* at *5. On this

reasoning, the district court held that no remedy is available for Georgia Expo's uses of VersaTop's trademarks, and rejected VersaTop's request for an injunction. *Id.* The court granted Georgia Expo's motion for summary judgment and denied VersaTop's cross-motion. Dist. Ct. Order at *1.

On this appeal, Georgia Expo acknowledges that it "circulated a flyer in late September 2015 indicating that it had a 'Pipe & Drape 2.0' 'in development,' which could be 'expected Q1 2016,'" Georgia Expo Br. 2, and does not contest that its "brochures included a picture of VersaTop's coupler product and a reference to VersaTop's product name." F&R at *1, *4. Nor does Georgia Expo "dispute VersaTop's ownership of the trademarks at issue." *Id.* at *4. VersaTop states that Section 43(a) of the Lanham Act establishes a statutory cause of action for likelihood of confusion, as is plainly present in this case. Georgia Expo responds only that it has not used the VersaTop marks "in commerce," and that the district court correctly interpreted the statute to hold that there had been no violation of federal trademark law.

DISCUSSION

### *Jurisdiction*

VersaTop filed a notice of appeal to the U.S. Court of Appeals for the Ninth Circuit. VersaTop then filed a "stipulated motion" requesting transfer of the appeal to the Federal Circuit pursuant to 28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction"). The Ninth Circuit agreed that transfer was appropriate. *VersaTop Support Sys., Inc. v. Ga. Expo, Inc.*, No. 17–35406, 2017 WL 9360849, at *1 (9th Cir. Nov. 16, 2017) (citing *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991 (9th Cir. 2015)).

Appellate jurisdiction is with the Federal Circuit, for this is an "appeal from a final decision of a district court in a civil action" that arises under an "Act of Congress

relating to patents." 28 U.S.C. § 1295(a)(1) (2012). *See Atari, Inc. v. JS & A Grp., Inc.*, 747 F.2d 1422, 1427–30 (Fed. Cir. 1984) (en banc) (discussing assignment of appellate case jurisdiction exclusively to the Federal Circuit when the complaint includes a claim arising under the patent law); *see also Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1346 (Fed. Cir. 1999) ("Because the complaint contained patent infringement claims, the district court's jurisdiction arose under 28 U.S.C. § 1338(a). This established the path of appeal, giving exclusive jurisdiction in this court pursuant to 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1)."); *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1349–50 (Fed. Cir. 1991) ("The path of appeal is determined by the basis of jurisdiction in the district court, and is not controlled by the district court's decision or the substance of the issues that are appealed."); *Amity Rubberized Pen*, 793 F.3d at 994 ("The existence of a single claim created by federal patent law is sufficient to trigger the Federal Circuit's exclusive appellate jurisdiction over the entire case; the fact that a complaint also asserts non-patent claims, or that non-patent issues will predominate, is immaterial.").

### *Standards of Review*

For review of non-patent law issues whose appeal reaches the Federal Circuit on pendent jurisdiction, we apply the law of the regional circuit in which the district court resides. *See Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1334 (Fed. Cir. 2004) ("In a trademark case, we apply the law of the applicable regional circuit, in this case, the Ninth Circuit." (citing *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 987–88 (Fed. Cir. 1993))).

Summary judgment is reviewed for correctness in law. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *see Playboy Enters., Inc. v. Netscape Comm'ns Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004) ("Viewing the

evidence in the light most favorable to [the non-movant], and drawing all reasonable inferences in [that party's] favor, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.").

### *The Trademark Statute*

The purposes of trademark law are summarized in Title 15, Chapter 22—Trademarks:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; . . . .

15 U.S.C. § 1127 (Section 45 of the Lanham Act). The legislative record reports that "when it is considered that the protection of trademarks is merely protection to good will, to prevent diversion of trade through misrepresentation, and the protection of the public against deception, a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them." S. Rep. No. 79–1333, at 5–6 (1946). Implementing these purposes, the statute provides:

> **§ 1125  False designations of origin, false descriptions, and dilution** [Section 43]
>
> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of

fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Title 15 also contains the statutory provisions for federal registration of trademarks, administered by the Patent and Trademark Office; the title includes a definitional section, including a definition of "use in commerce":

> **§ 1127 Construction and definitions, intent of chapter** [Section 45]
>
> * * *
>
> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
>
> (1) on goods when--
>
> > (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels

affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

When the Trademark Act was amended in 1988 to authorize federal registration based on "intent to use," as well as actual use in commerce, the legislative reports explicitly recognized that this statutory definition of "use in commerce" applies to the use of a trademark for purposes of federal registration, and reaffirmed that an infringing use may be "use of any type":

[T]he revised definition [of use in commerce] is intended to apply to all aspects of the trademark registration process, from applications to register, whether they are based on use or on intent-to-use, and statements of use filed under Section 13 of the Act, to affidavits of use filed under Section 8, renewals and issues of abandonment. Clearly, however, use of any type will continue to be considered in an infringement action.

S. Rep. No. 100–515, at 45 (1988). *See also* H.R. Rep. No. 100–1028, at 15 (1988) ("Section 29 also amends the definition of 'use in commerce' in Section 45, to require the bona fide use of a mark in the ordinary course of trade. . . . The definition of 'use in commerce' is consistent with the Committee's intention to eliminate the practice of making a

single shipment—'token use' solely for the purpose of re-serving a mark.").

The Ninth Circuit has had occasion to refer to the dis-tinction between "use in commerce" as a requirement for federal trademark registration—as defined in Section 1127—and infringing uses of a mark.  In *Playboy Enter-prises,* 354 F.3d at 1023–24, the court applied the statute to charges of likelihood of confusion and dilution based on Netscape's "keyed" internet advertising use of Playboy's marks, and explained:

> In addition to defining "commerce," 15 U.S.C. § 1127 also defines "use in commerce."  15 U.S.C. § 1127.  That latter definition applies to the re-quired use a plaintiff must make in order to have rights in a mark, as defined by 15 U.S.C. § 1051. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194–95 (11th Cir. 2001).  It does not enter into our jurisdictional analysis.

*Id.* at 1024 n.11.  The court held that there were factual issues as to whether Netscape's use of Playboy's marks was an infringing use based on application of the circuit's *Sleek-craft* factors, unrelated to the "use in commerce" definition of § 1127.  *Id.* at 1031.

The Ninth Circuit revisited this issue in *Network Auto-mation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011).  In answer to the question of "whether the use of another's trademark as a search engine keyword to trigger one's own product advertisement violates the Lanham Act," *id.* at 1148, the Ninth Circuit ruled that a sufficient use of Network Automation's mark had been made by Advanced Systems, and that it "agree[d] with the Second Circuit that such use is a 'use in commerce' under the Lanham Act."  *Id.* at 1144–45 (citing *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009)).

The treatise *McCarthy on Trademarks and Unfair Competition* explains that the "use in commerce" definition in § 1127—

> was clearly drafted to define the types of "use" that are needed to qualify a mark for federal registration—not as a candidate for infringement. It defines the kinds of "use" needed to acquire registerable trademark rights—not to infringe them.

4 *McCarthy* § 23:11.50 (5th ed. 2018) (footnote omitted); *see id.* ("This statutory anachronism certainly was never intended to limit the scope of 'uses' that would constitute infringement.").

In *Hasbro, Inc. v. Sweetpea Entertainment, Inc.*, No. 13-3406, 2014 WL 12586021 (C.D. Cal. Feb. 25, 2014), the district court again stated the distinction between infringing use and the "use in commerce" requirement for federal registration:

> Sweetpea's statement of the law is incorrect. The Ninth Circuit has explained that the definition of "use in commerce" in Section 1127 "applies to the required use a plaintiff must make in order *to have rights in a mark . . . ." Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 n.11 (9th Cir. 2004). Section 1127 is not, however, the legal standard for proving infringement.

*Id.* at *9 (omission in original).

Contrary to this precedent, the district court in this case incorrectly applied the definition of "use in commerce" that is included in the statute for purposes of trademark registration. This definition does not apply to trademark infringement. *See Network Automation*, 638 F.3d at 1144–45; *Playboy*, 354 F.3d at 1024 n.11.

The cases that Georgia Expo cites on appeal do not support a contrary holding. Georgia Expo cites *Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848 (9th Cir. 2002), in which the defendant repaired damaged endoscopes that continued to bear the original manufacturer's engraved name "Karl Storz"; the court reasoned that reasonable repair would not infringe the trademark, stating that "'use in commerce' appears to contemplate a trading upon the goodwill of or association with the trademark holder." *Id.* at 855. This case does not support Georgia Expo's use of VersaTop's trademarks.

Georgia Expo also cites *Freecycle Network, Inc. v. Oey*, 505 F.3d 898 (9th Cir. 2007). Again, this case is factually unrelated. In *Freecycle*, an infringement action, the defendant Oey had urged public opposition to trademark registration of the word "freecycle." The Ninth Circuit found that "[a]s a threshold matter, Oey's actions likely did not constitute a 'use in commerce,' 15 U.S.C. § 1125(a)(1), as the record in this case does not indicate they were made to promote any competing service or reap any commercial benefit whatsoever." *Id.* at 903. In contrast, Georgia Expo does not deny commercial purpose.

The district court in this case declined to consider the factors relevant to likelihood of confusion. In *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, the Ninth Circuit explained:

> The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.

174 F.3d 1036, 1053 (9th Cir. 1999) (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)); *see Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,* 457 F.3d 1062, 1075–76 (9th Cir. 2006) (likelihood of confusion arises "when customers viewing the mark would probably assume that the product or service it represents *is*

*associated with the source* of a different product or service identified by a similar mark" (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 845 (9th Cir. 1987))). Thus, the purposes of trademark law are implemented to "help[] assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164–65 (1995).

Pursuant to the statutory purposes, the Ninth Circuit developed the *Sleekcraft* factors for determining likelihood of confusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). These factors, as summarized in *AuTomotive Gold*, are "(1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; (8) likelihood of expansion." 547 F.3d at 1075–76. The Ninth Circuit has emphasized that "the eight factors [*Sleekcraft*] recited are not exhaustive," and should be applied "in a flexible manner." *Network Automation,* 638 F.3d at 1145.

The Ninth Circuit has also described the "trinity [that] constitutes the most crucial body of the *Sleekcraft* analysis," *viz.,* comparison of the marks, the similarity of the goods or services, and the identity of the marketing and advertising channels. *GoTo.Com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000); *see Network Automation*, 638 F.3d at 1145 (discussing flexibility of the analysis and stating that in certain cases, "only some of [the *Sleekcraft* factors] are relevant to determining whether confusion is likely in the case at hand").

Georgia Expo admitted that it used VersaTop's marks in its advertising and brochures, and that the parties "compete directly" in the drape and rod industry. F&R at *1, *4; Georgia Expo Br. 1–2. The type of goods sold by both

companies—the pipe and drape systems—are identical. *See* F&R at \*1 ("[Georgia Expo] is a competitor to VersaTop in the market for exhibition pipe and drape products."). It is undisputed that the parties operate in the same marketing channels—the flyers were distributed by Georgia Expo for an industry trade show. *See* F&R at \*1 ("VersaTop's Complaint included three photographs it asserts were taken at an October 2015 trade show at which Georgia Expo presented the coupler product that VersaTop alleged Georgia Expo was offering for sale.")

Georgia Expo, in both its own motion for summary judgment, and in opposition to VersaTop's cross-motion, made no argument regarding these likelihood of confusion factors, contending only that there was no evidence of actual confusion. *See VersaTop Support Sys., Inc. v. Georgia Expo, Inc.*, No. 3:15-cv-02030-JE (D. Or. Apr. 13, 2017), ECF Nos. 34, 40; *see also* J.A. 334–35. However, "[t]he failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove . . . ." *Brookfield*, 174 F.3d at 1050; *see also Au-Tomotive Gold*, 457 F.3d at 1077 (same); *Eclipse Assocs. Ltd. v. Data Gen. Corp.,* 894 F.2d 1114, 1118–19 (9th Cir. 1990) ("Though the court found no evidence of actual confusion, this is merely one factor to be considered . . . and it is not determinative." (omission in original) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986))).

The Ninth Circuit stated in *Au-Tomotive Gold,* 457 F.3d at 1075, "in cases where the evidence is clear and tilts heavily in favor of a likelihood of confusion, we have not hesitated to affirm summary judgment on this point." And in *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004), the court held that the trademark owner was entitled to summary judgment on a claim of likelihood of confusion where, *inter alia*, the marks were identical, the goods were related, and the marketing channels overlapped. We therefore "conclude as a matter of law

that likelihood of infringement is clear cut here." *Au-Tomotive Gold*, 457 F.3d at 1075.  The district court's judgment in favor of Georgia Expo is reversed, and judgment is entered in favor of VersaTop.  We remand for any appropriate further proceedings.

**REVERSED AND REMANDED**